OPINION
{¶ 1} Defendant-appellant Joseph Neff appeals the Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child due to the commission of acts which, if committed by an adult, would constitute offenses of rape, in violation of R.C. 2907.02(A)(1)(2). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On February 22, 2002, a complaint was filed in the Tuscarawas County Court of Common Pleas, Juvenile Division, alleging appellant was delinquent due to the commission of the aforementioned charges. Appellant denied both charges in writing on March 4, 2002. The trial court scheduled an adjudicatory hearing for May 23, 2002, at which time the following evidence was adduced.
 {¶ 3} Erika Chumney, the victim, testified she had known appellant for approximately a year and a half, and the two had dated for a short period. On Friday, September 21, 2001, following an evening at the county fair, Erika stayed overnight with her friend Misty Neff, appellant's sister, at the home of Misty and appellant's mother and stepfather. Erika and Misty began watching a video in Misty's bedroom sometime around midnight. Appellant entered the room during the last half-hour of the video. At approximately 1:30 a.m., the three started a second video. Misty and appellant fell asleep during the course of the second movie. When the movie concluded around 3:00 a.m., Erika woke up appellant, as he had asked her. Erika proceeded to the bathroom. Erika returned from the bathroom expecting appellant to have left the room, however, appellant was still on the bed. Erika asked appellant if he wanted to watch another video. Appellant responded "No," and then "said something about having sex." Tr. at 24. After Erika negatively responded to his request, appellant told her, "We could do everything but sex." Id. Erika declined appellant's offer, informing him she had a boyfriend. Appellant attempted to kiss Erika, but she adverted his moves. Thereafter, appellant moved his hand down her boxers and underpants, and placed his finger into her vagina. Erika testified she felt his finger penetrate her vagina.
 {¶ 4} Erika moved backwards and, as she scooted away, her boxers and underwear rolled down to her knees. Appellant leaned over her and tried to kiss her. He told her he loved her and inserted his penis into her vagina. Erika pushed appellant off of her and immediately left the bedroom. Erika testified Misty remained asleep during the incident. Erika did not advise anyone of the incident until approximately one month later.
 {¶ 5} Brian Fox, a classmate of appellant and Erika, testified he and appellant were in social studies class the following Monday. As the two discussed their weekends, appellant informed Fox he "fingered" Erika while she was at his house.
 {¶ 6} Tyler Chumney, Erika's brother, testified appellant commented to him, "Do you know the real reason why your sister's mad at me." Tr. at 62. Tyler responded, "Wasn't it because you tried to have sex with her" to which appellant replied, "Yeah, something like that." Id.
 {¶ 7} Appellant testified on his own behalf. Although appellant agrees with Erika's rendition of the events to the point when Erika roused appellant after he had fallen asleep during the second video, his version of the proceeding events differs substantially. Appellant stated after the movie concluded, he and Erika had a conversation regarding Erika's boyfriend. Appellant testified he advised Erika to breakup with her boyfriend because he treated her poorly. Appellant denied having any sexual contact with Erika. Appellant noted his sister, Misty, woke up after the conclusion of the second video.
 {¶ 8} Misty Neff testified she did not fall asleep while watching the second video. Misty stated appellant had fallen asleep during the second video, and Erika woke him up about a half hour before the video ended. Erika subsequently fell asleep. When the second video concluded, appellant returned to his own bedroom. Misty stated the only thing she observed appellant do to Erika was talk with her. Misty noted, when she and Erika went downstairs the following morning, Erika sat next to appellant on the sofa.
 {¶ 9} Mark Kellerman, appellant's stepfather, testified, on the evening in question, he was watching a ball game on television. At approximately 1:30 a.m., Kellerman proceeded upstairs to his bedroom, which is located across the hall from Misty's bedroom. He watched television in his bedroom until 3:00 or 3:30 a.m. Kellerman indicated he did not notice anything out of the ordinary occurring in Misty's bedroom.
 {¶ 10} Upon the conclusion of his defense, appellant requested the trial court permit him to present another witness at a later time. Appellant explained a subpoena was filed three days prior to trial, but had not been served upon the witness. The trial court had a discussion with counsel for both parties off the record, after which the trial court denied appellant's request for a continuance.
 {¶ 11} Via Judgment Entry filed June 10, 2002, the trial court adjudicated appellant a delinquent and scheduled a disposition hearing for July 22, 2002. At the disposition hearing, the trial court ordered appellant be committed to the Department of Youth Services for a minimum period of one year and not beyond appellant's twenty first birthday. The trial court suspended the commitment and placed appellant in court placement. The trial court memorialized the disposition via Judgment Entry filed July 25, 2002.
 {¶ 12} It is from the trial court's adjudication of him as a delinquent appellant appeals, raising the following assignments of error:
 {¶ 13} "I. The trial court abused its discretion when it denied the appellant's motion for a continuance and failed to provide a reason for the denial.
 {¶ 14} "II. The trial court's finding that the prosecuting attorney proved by proof beyond a reasonable doubt that the appellant committed the two counts of rape was against the manifest weight of the evidence."
 I. {¶ 15} In his first assignment of error, appellant asserts the trial court abused its discretion in denying his request for a continuance.
 {¶ 16} Juv. R. 23 provides: "Continuances shall be granted only when imperative to secure fair treatment for the parties." The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. State v. Unger (1981), 67 Ohio St.2d 65. In order to find an abuse of discretion, we must determine whether the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. In reviewing a trial court's denial of a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconveniences to witnesses, opposing counsel and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and other relevant factors, depending on the unique facts of each case. State v.Unger, surpa.
 {¶ 17} We begin by noting appellant's request to call an additional witness at a later time does not constitute a formal request for a continuance. Assuming, arguendo, we construe such request as a motion for a continuance, we do not find the trial court abused its discretion in denying the motion. Appellant places great emphasis on the fact he had not requested any prior continuances and the trial court had not granted any continuances for either party. Additionally, appellant submits he did not contribute to the absence of the witness. Although we believe these factors weigh in favor of granting the continuance, other factors weigh against granting the continuance. Appellant requested the continuance at the close of his case. The entire trial was completed except for the State's calling of the victim as a rebuttal witness. A continuance, if granted, would inconvenience the witnesses, especially the victim, the State and the trial court. Further, appellant did not subpoena the witness until 3 days before trial.
 {¶ 18} Based upon the foregoing, we find the trial court did not abuse its discretion in denying appellant's request for a continuance.
 {¶ 19} Appellant's first assignment of error is overruled.
 II. {¶ 20} In his second assignment of error, appellant asserts the trial court's finding of delinquency was against the manifest weight of the evidence.
 {¶ 21} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 22} Appellant submits the evidence presented weighed heavily against a finding he had committed the two offenses of rape. In support of his assertion, appellant compares Erika Chumney's testimony regarding the events of the night of September 21, 2001, with his own testimony and the testimony of his sister and his stepfather. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. The trial court as the trier of fact was free to accept or reject any or all the testimony of the witnesses. Erika testified in detail about the two distinct instances of sexual conduct. We find this testimony alone was sufficient for the trial court to find appellant guilty of the offenses charged.
 {¶ 23} Appellant's second assignment of error is overruled.
 {¶ 24} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
By: Hoffman, J., Gwin, P.J., and Farmer, J. concur.
topic: adjudication of delinquency.